This is a video of the AT&T Intellectual Property II        a better place for you to work.   please leave a comment below. I will be happy to answer them. I hope you enjoyed this video It was a little save.  We have our third case this morning. This is number 16-1830. In Re AT&T Intellectual Property II Thank you, Your Honor. The court is pleased. To these parties. They could have abandoned it before the PTO acted on it. There's no question. Is there that the PTO could have maintained an ex-party re-exam based on these same facts? In other words, they could have just said, OK, well, the inter-parties re-exam is over with, but we're going to do an ex-party re-exam. They could do that, right? Perhaps, but that's not what they did. It's not perhaps. They could, right? If they made the determination that there was a reasonable ground to believe that there was a lack of validity, right? Sure. There's obviously a statutory procedure for ex-party re-exams, but that's not the procedure that was invoked or followed here. What difference does it make? First of all, Congress set up two separate ways of proceeding. The PTO followed one way. It didn't follow the rules for that way. As a practical matter, what difference is there? There are differences between the ex-party and the inter-parties re-exam proceedings. As far as you're concerned, what difference? How are you prejudiced by the fact that they continued the inter-parties proceeding rather than started a new ex-party proceeding? We're prejudiced in a number of ways. First of all, the way this started based on a piece of prior art called Yang, which was in the LG request, but which was abandoned before the PTO could act on it. Then they switched to a reading of Kraus that... They could have started a proceeding based on Kraus. They could have, but LG couldn't have pursued Kraus, so this proceeding just took off in a direction it could not have gone had it proceeded as it was supposed to. I don't think you're addressing my question. What is the difference of their continuing the inter-parties proceeding versus an ex-party proceeding? They could have made the Kraus prior art. They could have had a re-exam based on it. How does it adversely affect you that they did it one way rather than the other? Well, Your Honor, I guess all I can say is they invoked a particular procedure under the statute. The statute imposes requirements before they can invoke that procedure. Those requirements were not met. Perhaps they could have taken a different route. They didn't. They're supposed to comply with the statute, and they didn't do it. But there are circuit cases saying that an agency can, for example, if it could, there's an EEO case, EEOC case, where the agency intervened in a private proceeding, even though the private party gave up. And the court said, well, the EEOC could have started independent proceedings, so it doesn't make any difference that the private party gave up. It seems to be similar to this. It may be similar, Your Honor, but it's not the same thing because here you have two statutorily defined separate procedures and I don't want to beat a dead horse, but the PTO invoked one. It didn't comply with the statutory requirements for that one, and so it should not have proceeded. This proceeding should never have started. But let me, I don't want to belabor that point. Let me turn to the merits. The prior art and the 071 patent, the AT&T patent, both address the problem of processing and transmitting the huge amount of data required to send digital images. The 071 patent addresses that problem by using coding techniques that allow for data compression and by sending a single entity or vector that identifies the locations of all of the coded coefficients in a block of image data. Krauss took a very different approach. Krauss breaks up a block of image data into groups or subsets consisting of less than all of the coefficients and sends multiple vectors to then allow the block to be reconstructed. Now Krauss's preferred embodiment is to divide a block into specific regions and send a separate vector for each one, but the Krauss method, whether it uses subdivided regions or not, is to send only groups or subsets of the transformed coefficients at one time rather than send them all in a single entity. But the PTO found that it disclosed doing a single block, right? Well, here's what the PTO, the PTAB found. The PTAB relied on two grounds. One was a passage at the bottom of column 7 going on to column 8 where Krauss says... But they made the determination that Krauss disclosed doing it with respect to an entire block. Yes, they did, sure. But they were wrong. They misread Krauss and I would submit they also applied obvious nuts type reasoning to an anticipation case. They focused on two things. The first was a passage where Krauss says, you know, if you're dealing with a whole block, that's a lot of combinations of image data and it is not easy to compute all of that. So my solution is to divide the block up into regions and you send smaller sets of data with vectors for each. Now the board took that not easy comment and said that reflects that it was contemplated in the prior art that you could do this. Well, first of all, saying that something is contemplated in the prior art is not a disclosure of a specific way of doing it. What Krauss was doing was identifying the problem. The problem is this is too much data to deal with and my solution is let's break it up. Moreover, even that passage doesn't disclose sending a single vector for all of the combinations or all of the non-zero and zero coefficients. It just talks about in the abstract the problem of computing all the combinations at one time. And then what the PTO did was it said effectively, yeah Krauss talks about doing this for a region and sending a vector for a region, but we think essentially you could extend this to a whole block. And it cites a passage in column 8. And the column 8 passage just talks about, and this is at appendix page 7 where they have this analysis. The column 8 passage just talks about dealing with a region and sending a 16-bit vector for the region and a 16-bit vector can't transmit all the image data for an entire block. And that's all Krauss talks about throughout the specification. And in fact, the PTO in its brief I think it's at page 19, says that Krauss discloses using a 16-bit vector to transmit the coefficients in the list of transform, the non-zero coefficients. You can't do an entire block with a 16-bit vector. That is in fact what Krauss discloses. But you can't do it that way. The other thing the PTO said, and this is why I say they let obviousness type considerations get into an anticipation analysis. They say, and then the PTO echoes this in their brief, there's nothing in Krauss that says you couldn't apply his method to an entire block. Well, anticipation requires an affirmative disclosure of the claimed invention, not a general statement that, you know, I don't think it's impossible. Moreover, Krauss' method is, whether he's dealing with a block or a region, is to generate a vector representing fewer than all of the non-zero transform coefficients and send them basically in units. That's the preferred embodiment in this. It's divide the block into formal regions. But the concept of Krauss is breaking up the transform coefficients into sets, subsets or groups is the term Krauss uses, and to send those rather than try to send it all at once. The other thing the PCAB pointed to was claims 1 and 2 of Krauss said that claim 2 talks about dividing it into regions and having a vector for each, and that claim 1 doesn't say you have to divide it into regions. Well, that's true, but what claim 1 is talking about is a group of coefficients qualified for transmission from the block. Not all the coefficients qualified, not the coefficients qualified, a group of them. Krauss uses group and subset throughout the specification interchangeably to refer to some but not all of the non-zero coefficients in the block. So what Krauss is talking about is not the 071 invention where you code everything together and send a single vector to allow the decoder to place the transform coefficients in the right place. It's talking about a different method, which is sending separate vectors for different subsets of the transform coefficients. Now, on appeal, the PTO, I think, recognizing the problems with the board's analysis has an alternative argument, which they admit the board did not expressly discuss. The first problem with that, of course, is that you can only review the rationale that the board did actually discuss. So if there's any confusion about that, at a minimum, the case should be sent back for the board to explain its reasoning. In fact, the passage that the PTO relies on, which is in column 7, was not discussed at all by the board. The PTO says, well, the board cited a part of the answer, the examiner's answer that kind of refers to it, but that's not good enough. There was no discussion of it at all, and moreover, it doesn't solve the problem, because the passage that the PTO relies on on appeal, and this is column 7, lines 27 to 47 of Krauss, appendix 49. Again, it's talking about, first of all, in large part, it's talking about the preferred embodiment, which is the subsets and regions and sending a vector for each. But even beyond that, it is talking about the concept of sending fewer than all at once with the preferred embodiment of dividing it up formally and having vectors for each. As a matter of process, it's improper, because it's not the rationale the board adopted, and as a matter of substance, the PTO is wrong about what that teaches. I'd like you to put in a capsule your argument. It seems to me that the board found, and the question is whether this is substantial evidence that Krauss discloses vector coding of the entire pixel block. That's the issue that we're looking at here. And the board comments on that. We're looking at that, and we're looking at this under a standard review of substantial evidence. Point to me why that is not... Why the reasoning of the board is not supported by substantial evidence. So the board's reasoning is at pages 6 and 7 of the appendix. And what the board says is, as I said, it says two things. One is it refers to that passage where Krauss says it's not easy to compute all of this. In that passage, Krauss does not say how to send a single entity or single vector for the entire block. That's the invention of the 071 patent. Krauss says, this is hard to do because of the large number of potential combinations, so I've got a better way. I've got a different way. And my way is multiple regions and vectors for a single block. So that doesn't do it. The other thing the board says... Let me find the exact passage here. The board says that the examiner finds that there's nothing within Krauss that suggests that Krauss' technique must only be applied to subregions. Well, that's not an anticipation finding. It may not say, well, you can't do this, but it doesn't say you can't, which is what you'd have to have for anticipation. And finally, when the board talks about... Are you still on page 6? Oh, I'm sorry, I moved to page 7. The reasoning spans those two. There is nothing in Krauss, and the board doesn't point to anything where it's talking about a single vector for all the image data in the entire block. And saying that Krauss' method can be applied to a whole block, which the board says, well, that's true in a sense, but Krauss' method is having subsets or subsets within the block. So whether you say you're applying his method to the entire block or to regions within the block, it's still not the 071 patent because it's not generating a single entity for all of the image data. Okay, you're in your rebuttal time. Thank you, Your Honor. Mr. Foreman? May it please the court. Substantial evidence supports the anticipation rejection in this case. If you look at the Krauss prior art patent, specifically appendix page 49, column 7, line 27, in accordance with the present invention, a unique code word is used to specify a subset of coefficients selected for transmission within a block of transformed coefficients or within portions of the block referred to as regions. Later on in that same column, there are two other references to block or region and then at line 51, it explains that only  after quantization are transmitted. This is a disclosure right here of Krauss saying that the vector coding method can be applied to a block of transformed coefficients or a region of transformed coefficients. And while much of Krauss is discussing the application to the regions... Let's go back to that around line 28, where you're reading in accordance with the present invention, a unique code word is used to specify a subset of coefficients selected for within a block. And you're saying that the use of the block here signifies single coding? Yes, it's saying this can be applied to a block of transformed coefficients or it can be applied to regions. But it says within portions of the block and it describes those portions as regions. Correct. The regions part is what AT&T is focusing on and that we acknowledge is not what AT&T's Claim 1 is about. And Krauss spends much of its time discussing this regions embodiment where it takes a square block and breaks it up into... You're saying that that sentence is distinguishing within a block meaning the whole block or within a portion of the block. Yes, it's saying it can be applied to the full block or it can be applied to regions within the block. There are two different options there. And then later on it says line 38 says block or region. Line 44 says each block or region. And this is consistent with Claim 1. Claims 1 and 2 of Krauss where... I'm sorry, I missed it. Show me where it says the whole block. Well, starting I mean lines 29 and 30 selected for transmission within a block of transform coefficients or within portions of the block referred to as regions. So what it's doing is it's looking for the non-zero transform coefficients. So it's either looking for them within a full block or it's looking for them within a specific region within the block. And then later on line 38 says the group of coefficients that could be within a block or region. And line 44 says the group of coefficients selected for transmission from each block or region. So it's clearly referring to two different things. You can apply this to a block or you can apply this to a region within a block. And Claims 1 and 2 echo that because Claim 1 states that you provide a block of transform coefficients and generate a vector to identify the non-zero coefficients. What about the statement at 25 that says there's no particular scanning method is required to maintain the high compression? That's consistent with AT&T's patent which says the same thing. But that's not part of, I mean that's not recited in AT&T's claim. So I think what AT&T seems to be focusing on is the subset language. But I think all that refers to is that Crouse's method could be applied to identify any sort of transform coefficients that are selected for transmission. It gives the example starting at line 51 that that could be non-zero coefficients. But it could be, I mean they just describe it more generally that it could be any subset that you choose. So both in AT&T's patent and here, one of the example subsets is all non-zero coefficients. So it's doing the same thing. It's looking at a block of transform coefficients, finding the non-zero coefficients and creating a vector to identify those locations. And this is stated again in column 7. This is stated with the example of the 8x8 block that the examiner and the board relied on. And this is stated within claims 1 and 2 of Crouse. And we think that's more than enough to meet the substantial evidence requirement. Now I acknowledge, and I acknowledge this in my brief, that the board doesn't specifically talk about the blocker region language in column 7 of Crouse. But the board approvingly cites the examiner's answer which discusses this in detail. And this column 7 language was always part of the examiner's projection. And there's nothing in the board's decision that goes against that. And the board's decision is fully consistent with that. So we don't think this is a situation where I'm going beyond what the board's decision is or saying something that's not in the board decision. I mean, it's not expressly in there, but the board cites the examiner's answer. The examiner expressly relies on it. And the examiner had relied on it both in the action closing prosecution, the right of appeal notice, and the examiner's answer. Now if there are no further questions on the anticipation rejection, I'll just say a couple words about AT&T's procedural arguments. AT&T is trying to argue that because LG unsuccessfully tried to ask the PTO to deny its own re-exam request, that there was no active requester. But there's no mechanism within the statutes or the PTO rules for a requester to withdraw a re-exam request. So as far as... What difference does it make? The PTO could have instituted an ex parte procedure. I agree. Under Section 303, the director has the right to institute an ex parte re-exam on her own accord. So for that rationality, the director could have instituted a re-exam on Crouse. But that didn't happen here. There wasn't a re-institution. No, because it wasn't necessary to do that because we weren't doing anything contrary to the statute. There was a requester here. LG filed a proper request. There was no mechanism to withdraw it or have it denied on LG's own request. And the PTO considered it and granted the re-exam request. There was nothing... We did nothing contrary to the statute in doing that. This is not like district court litigation or even an IPR where there's some right of the party bringing the action to withdraw it or seek that it's dismissed. Once you file a re-exam request, you can't unring that bell. If you give us that re-exam request, we're going to make a determination on it. Because that re-exam request was filed and there was no mechanism for LG to withdraw it, we rendered a decision on it. Do we have jurisdiction to review this issue? We don't believe under 312C, we don't believe that... Because this goes to the institution of the re-exam, we don't believe there's jurisdiction. Even if you want to reach the ultimate issue, I don't think there's any issue of us going beyond our statutory authority. There's nothing further. Thank you. Thank you, Your Honor. Very briefly, what you just heard from was this new argument that they came up with on appeal. Wait, but it's in the examiner's answer, right? I think if you look at the examiner's answer, first of all, the board says, the examiner said that there's no reason you can't apply this method to an entire block. It has a general citation to the examiner's answer. The examiner's answer talks about Column 7 in very general terms. It doesn't focus on this language in particular. I don't think you can say that this argument you just heard reflects the board's reasoning. It's not what the board said. The board focused on different parts of Krauss and not this part. Moreover, saying that, as I said when I was up here before, saying that you can apply Krauss' method to a block or a region doesn't answer the question because even in that Column 7 passage that counsel was referring to, what it talks about is a subset of coefficients selected for transmission from a block or a region. Not the coefficients selected, not even the subset selected. It's a subset and that's the key because what Krauss is talking about is dealing with fewer than all at one time rather than trying to process and transmit the entire block at once. And I would direct the court's attention to Column 11, the passage at beginning at about line 12 through 35 or so, and I'm not going to read it to the court, but this is sort of the summary that Krauss is wrapping up before getting into claims. It should now be appreciated that here's my present invention and the important part is it talks about sending vector code words to reconstruct a single block of image data. So it's talking about multiple vectors, not a single vector, and that's the nub of the invention. Okay, I think we're out of time. I am. Thank you, Your Honor. I thank both counsel. The case is submitted. That concludes our session for today. Thank you.